IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIA RODRÍGUEZ-PÉREZ; JUAN G. BIANCHI-DORTA; ELIZABETH DÁVILA-RODRIGUEZ; JESÚS FONSECA-RESTO<br><br>     PLAINTIFFS<br>     v.<br><br>ZALE CORPORATION d/b/a ZALES OF PUERTO RICO, INC. and ZALES; ZALE PUERTO RICO, INC. d/b/a ZALES OF PUERTO RICO, INC. and ZALES; GORDON'S JEWELRY CO. OF PUERTO RICO, INC. d/b/a GORDON⌀S JEWERLY and GORDON⌀S JEWELERS; GORDON'S JEWELERS, INC. d/b/a GORDON'S JEWELRY CO. OF PUERTO RICO, INC. and/or GORDON⌀S JEWERLY and/or GORDON⌀S JEWELERS<br><br>     DEFENDANTS | CIVIL NO. 16- 2218<br><br>RE: AGE DISCRIMINATION IN EMPLOYMENT ACT, PR⌀S LAW NO.100 OF JUNE 30, 1959; PR⌀S LAW NO. 80 OF MAY 30, 1976; RETALIATION UNDER THE FLSA; PR⌀S LAW 115 OF DECEMBER 20, 1991<br><br><br>DAMAGES EQUITABLE AND INJUNCTIVE RELIEF<br><br><br>TRIAL BY JURY |

## COMPLAINT AND DEMAND FOR JURY TRIAL

TO THE HONORABLE COURT:

     NOW COME the Plaintiffs, through the undersigned attorney, and very respectfully allege state and pray:

## INTRODUCTION

1.     Plaintiffs María Rodríguez-Pérez (Rodríguez or Plaintiff), Juan G. Bianchi-Dorta (Bianchi or Plaintiff) and Elizabeth Dávila-Rodríguez (Davila or Plaintiff) bring this action under

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 et seq., seeking damages as a result of the Defendants' discrimination against plaintiffs due to their age, and their discharge, in violation of the ADEA, Puerto Rico's Law No. 100 of June 30, 1959, as amended, (Law 100) and Law No. 80 of May 30, 1976. (Law 80). Rodriguez, Davila and Fonseca also bring action under the anti-retaliation provision of the Fair Labor Standards Act of 1938, (29 U.S.C. §215 (a) (3)) (FLSA) and Puerto Rico's Law No. 115 of December 20, 1991 (Law 115) to redress for Defendants' retaliation and their discharge in retaliation for engaging in a protected activity under Fair Labor Standards Act of 1938 (FLSA or the Act) and Law 115.

2.      Plaintiff Jesus Fonseca-Resto (Fonseca or Plaintiff) brings this action under the anti-retaliation provision of the Fair Labor Standards Act of 1938, (29 U.S.C. §215 (a) (3)), Law 115 and Law 80. Fonseca wants to redress for Defendants' retaliation and his discharge in retaliation for engaging in a protected activity under FLSA and Law 115. Fonseca alleges wrongful discharge under Law 80 also.

3.      Bianchi Zapata also brings an action against Defendants pursuant to the Fair Labor Standards Act of 1938, as amended, (29 U.S.C. §201, et seq.), (hereinafter referred to as the Act), seeking overtime compensation and damages as a result of Defendants' violation of sections 7, 11(c), 15(a)(2), 15(a)(5) and 16 (b) of the Act and Puerto Rico's Law No. 379 of May 15, 1948 (29 L.P.R.A. § 271 et seq.).

<u>JURISDICTION</u>

4.      Jurisdiction of this action is conferred upon the Court by 29 U.S.C. Sec. 633a (c), 29 U.S.C. 1132 (e), 28 U.S.C. Sections 1331 and 1345, Sections 16(b) and 15 (a) of the FLSA. Plaintiffs also seek relief pursuant to Law 115, Law 80 and Law 100.

.    5.    Venue is proper in this district pursuant to 28 U.S.C. 1391 (a) and (b).

6.    This Court's exercise of supplemental jurisdiction is invoked pursuant to 28 U.S.C. 1367 to hear l8the Commonwealth law claims because these arose from the same nucleus of operative facts.

7.    All conditions precedent to jurisdiction under 29 U.S.C. 633a and 29 U.S.C. 626 have occurred or have been complied with.

    a.    Rodriguez, Davila and Bianchi filed timely charges of employment discrimination on the basis of age discrimination on April 16, 2015 with the Puerto Rico Department of Labor Anti-Discrimination Unit and the Equal Employment Opportunity Commission ("EEOC").

    b.    After proceedings at the Department of Labor, the parties could not solve their differences.

    c.    The EEOC issued Right-to-sue letters in the charges on April 15, 2016, that were received by plaintiffs after April 15, 2016.

    d.    This complaint is being filed within 90 days of receipt of the "EEOC" right-to-sue letters.

8.    All the discriminatory employment practices alleged herein were committed within the Commonwealth of Puerto Rico.

9.    Defendant ZALE CORPORATION (hereinafter referred to as "Zales") is a corporation duly organized under the laws of other state than Puerto Rico and authorized to do business in Puerto Rico. It operates in PR under its name and the names of ZALES OF PUERTO RICO, INC. and ZALES, indistinctly.

10.     ZALE PUERTO RICO, INC. (hereinafter referred to as õZales PRö) is a corporation duly organized under the laws of Puerto Rico. It operates in PR under its name and the names of ZALE CORPORATION, ZALES OF PUERTO RICO, INC. and ZALES, indistinctly.

11.     GORDON'S JEWELERS, INC. is a corporation duly organized under the laws of other state than of Puerto Rico and authorized to do business in Puerto Rico. It operates in PR under its name and under the names of GORDON'S JEWELRY CO. OF PUERTO RICO, INC., GORDONøS JEWERLY and GORDONøS JEWELERS, indistinctly.

12.     GORDON'S JEWELRY CO. OF PUERTO RICO, INC. is a corporation duly organized under the laws of Puerto Rico. It operates in PR under its name and the names of GORDON'S JEWELERS, INC., GORDONøS JEWERLY and GORDONøS JEWELERS, indistinctly.

13.     Defendants are "persons" within the meaning of 29 U.S.C. 630 (a) and 29 U.S.C. 203 (a) inasmuch Defendants are corporation organized under the laws of the Commonwealth of Puerto Rico or of other states.

14.     Each Defendant, and Defendants in a combination, employed 15 or more employees for each working day in each of twenty or more calendar weeks in 2013, 2014 and 2015. Therefore, Defendants are õemployersö within the meaning of 29 U.S.C. 630 (b).

15.     Defendant are, and have always been, persons engaged in an industry affecting commerce as defined by 29 U.S.C. 630 (h). Defendants have the principal office and place of business in Irving, Texas. Defendants are, and have always been, a company dedicated to the sale of jewelry to the public, having more than 500 hundreds sale establishments around PR and

continental United States. In their business involvement, Defendants use and have always used jewelry and other materials and equipment that have been produced in the States and/or that have been moved, trade and transported among several States, among several States and Puerto Rico and/or among States, Puerto Rico and/or places outside. For instance, jewelry itself has always come from, and/or are transported and traded, among States, among States and Puerto Rico and/or among States, Puerto Rico and/or places outside. As part of their duties with Defendants, as we will see later, Plaintiffs handled these and other products and jewelry, thus they were personally engaged in an industry affecting commerce.

16.     Defendants are enterprises within the meaning of the Fair Labor Standards Act, 29 U.S.C. Section 203(r) (1), which are also engaged in commerce or in the production of goods for commerce. (interstate commerce). Defendants have the principal office and place of business in Irving, Texas. Defendants are, and have always been, a company dedicated to the sale of jewelry to the public, having more than 500 hundreds sale establishments around PR and continental United States. In this business involvement, Defendants use and have always used jewelry and other materials and equipment that have been produced in the States and/or that have been moved, trade and transported among several States, among several States and Puerto Rico and/or among States, Puerto Rico and/or places outside. For instance, jewelry itself has always come from, and/or are transported and traded, among States, among States and Puerto Rico and/or among States, Puerto Rico and/or places outside. As part of their duties with Defendants, as we will see later, Plaintiffs handled these and other products and jewelry, thus they were personally engaged in an industry affecting commerce. In addition, Defendants' annual gross volume of sales made or business done is not less than $500,000.

5

17. Defendants ZALE CORPORATION, ZALE PUERTO RICO, INC., GORDON'S JEWELERS, INC. and GORDON'S JEWELRY CO. OF PUERTO RICO, INC. were the employers of the Plaintiffs. ZALE CORPORATION and GORDON'S JEWELERS, INC. for some aspects, including certain aspects related to employment matters, acted as direct employers of Plaintiffs, and ZALE PUERTO RICO, INC. and GORDON'S JEWELRY CO. OF PUERTO RICO, INC. for some aspects, including certain aspects related to employment matters, acted as direct employers of Plaintiffs. For instance, internal employment complaints had to be addressed to ZALE CORPORATION and GORDON'S JEWELERS, INC. The supervisors of the stores were the Plaintiffs worked in PR were under the payroll of ZALE CORPORATION and GORDON'S JEWELERS, INC., as well as the Plaintiffs.

18. The plaintiffs worked for the defendants through a contract for an indefinite period of time since the initiation dates that will be stated.

19. Each Defendant is successor employer of each other since there was a total continuity of the operations. The changes of names and corporations did not involve the creation of a new operation, but that the operations continued to be identical. The same operation, the same emp1oyees and the same administration continued, among other things.

20. ZALE PUERTO RICO, INC. and GORDON'S JEWELRY CO. OF PUERTO RICO, INC. are subsidiary corporations of ZALE CORPORATION and GORDON'S JEWELERS, INC.

21. The recruitments and dismissals of employees of the Defendants were managed by the same officials.

22. ZALE CORPORATION and GORDON'S JEWELERS, INC. have exerted an

amount of participation in the subsidiaries matters that is sufficient and necessary to the total employment process, and have always possess the present and apparent means to exercise its clout in labor relation matters of the subsidiaries. For instance, the ZALE CORPORATION and GORDON'S JEWELERS, INC. dictated and applied common personnel policies applicable to all subsidiaries¢ employees, assigned a lifetime employee number to all the employees of the subsidiaries, established a common employee communication system among all the subsidiaries employees and assigned, managed and transferred to the subsidiaries the money used to pay their payroll among other things.

23.     Defendants are single employers for labor purpose. They have the same operation, the same employees and the same administration, among other things. All of the defendants are subsidiaries of ZALE CORPORATION, wherefore their owners are the same. The operations of the defendants are interrelated. Emp1oyees who were such under the payroll of one of the defendants provided in turn services to other Defendant. Such is the case, for instance, of the employees who supervised the stores of PR. The transfers of employees between establishments is a common practice in Defendants¢ For instance, Bianchi during his tenure with Defendants worked for Gordon¢s stores and for Zales stores. Bianchi was transferred among Defendant¢s stores, Gordon¢s stores and Zale stores, indistinctly, about eight times. Similar was the case of Rodriguez.

24.     The different Defendants¢ establishments operate in an integrated form. Among other things, the stores have common personnel policies and procedures applicable to all employees, common employee communication system and common supervisory and human resources management and structure. All the Defendants¢ stores and their employees are

7

supervised by the same person, a District Manager, who is supposed to apply the same rules. All the important human resources decisions are taken by the same person, Mrs. Paula Spalla, an the same office of human resources. The District Manager and the Human Resources person are employees under the payroll of Zale Corporation.

25.     The administration of Defendants is the same. All the Defendants operate from the same offices located in Irving, Texas. The administration falls under the same hands. The business decisions related to all the defendants are taken by the administration, which is centralized.

26.     The labor relations are centralized. Among other things, the employees of the defendants shared and share common personnel policies and procedures, had and have a lifetime employee number, shared and share a common employee communication system, their compensations had and have the same origin funds and all the important human resources decisions are taken by the same person, Mrs. Paula Spalla, at the same office of human resources. The Human Resources Department is part of the payroll of Zale Corporation. The subsidiaries operating in PR have no human resources office. The important labor decisions related to all defendantsø employees are taken by the same people, including the decision to terminate plaintiffs.

## THE NARRATIVE

27.     Rodriguez is 60 years old. She was born in 1956.

28.     Bianchi is 52 years old. He was born in 1963.

29.     Davila is 48 years old. He was born in 1968.

30.     Defendants operate several jewelry selling stores in PR. Plaintiffs worked for Defendants in PR as salesmen. Defendants discharged Rodriguez, Davila and Fonseca from their

8

employment on September 30, 2014. Bianchi was constructively discharged on July 2014. At the moment of the discharge, Bianchi's employment position title was store manager.

31.     Rodriguez worked for the Defendants since January 25, 1979.

32.     Bianchi worked for the Defendants since February 1984.

33.     Davila worked for the Defendants since February 1999.

34.     Fonseca worked for the Defendants since 2002 for approximately 5 years and since 2009 until his discharge in September 30, 2014.

35.     Plaintiffs were always excellent, capable and dedicated employees. At the moment of the discharge, Plaintiffs worked at the Zales store of Plaza Las Americas, which is the store with the highest sales in PR. Only the best salesmen worked at Plaza Las Americas store. Plaintiffs always performed at Defendants' satisfaction.

36.     On September 30, 2014, Defendants discharged Rodriguez and Davila due their age. Bianchi was constructively discharged for the same reason in July 2014.  Rodriguez' and Davila's discharge also responded, as well as Fonseca's discharge, to retaliation due to their participation in a protected activity under the FLSA.

37.     There were comments and actions that reflected age discrimination. The managers made Plaintiffs several remarks showing age discrimination. Among others, the managers commented to Plaintiffs that other store had better sales having young employees, that they had been in the company enough time and that the elder employees were tired and the company needed young employees. The Regional Manager and the District Manager (Shawn Powell) once told Bianchi that they did not want Bianchi as Manager because he was "even limping." A store manager received instructions in order to document the personnel records of elder employees to cover up eventual

discharges. In addition, many store managers, including Bianchi, were substituted by substantially younger and less experienced employees. In the store of Plaza Las Americas, for instance, Katy Gomez, about 30 years and very unexperienced, was assigned to substitute Bianchi.

38.     Bianchi was hospitalized in March 2014 due to a condition in his leg and had to take a sick leave. A new supervisor was assigned and he returned back to work in April 2014. This new supervisor and her chief, Shawn Powell, began to audit the store and told Bianchi that he could not work until having a medical certificate saying so. Bianchi had a certificate requesting a reasonable accommodation, but returned to his doctor, who issued a certificate excusing Bianchi until April 31, 2014, when he could begin working without any restriction. At his return, he received a "final" warning that gathered things that, did not only were not faults on his part, but also were normal to find after Bianchi's sick leave absent. Bianchi had been out of the store for a month and a half due to his medical condition. The final warning threatened Bianchi with discharge. He was been harassed by the managers. They want to discharge him. One of these supervisors was Shawn Powell, the one who told Bianchi that they did not want Bianchi as Manager because he was "even limping."

39.     Powell and the Regional Manager, Diana Hernandez, had promised Katy Gomez that she was not going to lose her job and, on May 7, 2014, Powell, in an unusual visit to PR, told Bianchi that he did not have a future in the company should he wanted to keep working with the Defendants. The managers continued harassing and pressuring Bianchi, who was hospitalized on May 16, 2014 due to the emotional situation created by the harassment. On July 7, 2014, Bianchi had no other alternative but to resign. Eleven store managers, all elders, were discharged or forced to resign.

40.     On August 22, 2016, Rodriguez, Davila and Fonseca, together with other employees, addressed to Paula Spalla, Director of Human Resources, an internal complaint. The complaint stated,

among other things, that the manager, Katy Gomez, was giving instructions to alter and change their payrolls in order to eliminate and erase the overtime that Plaintiffs had worked. This was done in order to avoid paying the overtime, which was not paid in occasions. Rodriguez, Davila and Fonseca mentioned a civil action that had been filed against the company before related to the same falsification. Altering these documents is gross misconduct under the Defendants' rules. Nevertheless, Defendants did nothing to Katy Gomez. Instead, Rodriguez, Davila and Fonseca were discharged a few days after. Gomez remains with the company.

41. The dismissal of the plaintiffs was unjustified for several reasons. Among other reasons, the order of seniority in the dismissals was not followed as required by Law 80. A seniority analysis was not done. Since the transfer of employees between Defendants' establishments was a common and known practice in Defendants', and Defendants' establishments operate in an integrated form, the Defendants also had to consider the seniority of the employees who had similar positions in the other establishments at the time of the dismissals. These other positions had to be offered to the Plaintiffs if the employees occupying them had less seniority, but the positions were no offered. Defendants knew that according to the law they had to offer these positions because Rodriguez was old that she was going to bump an employee in the store of Santa Rosa and later Defendants did not assign her to the position. Defendants offered positions in other stores to other employees, as to Katy Gomez, who remains working for the Defendants.

42. In sum, employees with similar positions at Defendants', and with less seniority and experience than the plaintiffs, remained in their positions after September 31, 2014.

43. The plaintiffs were not offered positions that were actually available at that moment and after. Among other things, within the 6 months following the dismissals Defendants

re-employed personnel to perform work the same and/or similar to the one performed by the plaintiffs at the time of their dismissal, and within their same occupational classification, without following the order of seniority in the reinstatement as required by Law Number 80 of May 30, 1976, as amended.

44.     There was a concerted plan to conceal what was unjustified, discriminatory and retaliatory in the dismissals of the plaintiffs. The plaintiffs were part of the better Defendantsø salesmen. Among other things, after the dismissal of the Rodriguez, Bianchi and Davila, who belong to the protected age, Defendantsø retained and hired employees with much less seniority, knowledge, experience and age of Rodriguez, Davila and Bianchi, for the positions within the same occupational classifications with similar tasks. In a similar manner, after the dismissal of the plaintiffs, who belong to the protected age, there remained young employees, with much less seniority, knowledge, experience and age than the plaintiffs, in positions within the same occupational classifications with tasks similar to those of the plaintiffs. There were, as stated in paragraphs 35 and 36, comments and actions that reflected age discrimination.

45.     Defendant has been õrenovatingö its employee staff by hiring young employees.

46.     Rodriguez, Davila and Bianchi were in the age group protected by the ADEA (over 40); they were discharged on September 30, 2014 and July 7, 2014; they were performing their job at a level that met his employerøs legitimate expectations (they were the better salesmen); and they were replaced by substantially younger employees who remained working on other stores in the same positions.

47.     Defendant provided a preferential and disparate treatment to those employees substantially younger than Rodriguez, Davila and Bianchi. Gomez was not reprimanded due to

falsification, a gross fault.

48.     Defendants' conduct is the proximate cause of all of Plaintiffs' damages.

49.     During Plaintiffs' tenure with Defendants, Defendants employed Plaintiffs, in and about its places of business in the activities of said enterprise engaged in commerce or in the production of goods for commerce as defined by law, including employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce (interstate commerce), as stated in details in Paragraphs 15 and 16 of this Complaint, statements of facts that Plaintiffs adopt by reference. Said enterprise, at all times hereinafter mentioned, has had an annual gross volume of sales made or business done in an amount not less than $500,000.00. Therefore, Plaintiffs have been employed in enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(4) of the Act prior to April 1,1990, and within the meaning of Section 3(s)(1)(A) of the Act as amended, 103 Stat. 938, Pub. L. 101-157, November 17, 1989, from 1999 until the date of discharge. Plaintiffs adopt by reference the statements of facts contained in the Paragraphs 15 and 16 of this Complaint.

50.     Defendants, in many working weeks, willfully and repeatedly violated and continue to violate the provisions of Section 7 and 15(a)(2) of the Act. Indeed, Defendants employed Bianchi and other employees in commerce or in the production of goods for commerce, or employed them in enterprises engaged in commerce or in the production of goods for commerce (interstate commerce), for working weeks longer than those prescribed in Section 7 of the Act without compensating Bianchi for in excess of the prescribed hours in said workweek, at rates no less than one and one-half times the regular rate at which Bianchi was employed. Hence, the Defendants are liable for unpaid overtime compensation owing to Bianchi under Section 7 of the

Act and an additional equal amount as liquidated damages pursuant to Section 16 (c) of the Act. Defendants are also liable for unpaid overtime and meal periods under Puerto Rico's Law No. 379 of May 15, 1948 (29 L.P.R.A. 271 et seq.) and an additional equal amount as liquidated damages.

51. Bianchi's salary with Defendants was $1,300.00 weekly approximately during the last 3 years of employment. This salary covered the regular hours of employment. Generally, Bianchi worked for Defendants 5 days a week during the last 3 years of employment. Bianchi was scheduled to work 8 hours daily in each of the 5 days. Defendants did not keep adequate records, time cards or clock records about Bianchi's working time, meaning records of working entrance and exit time, neither kept records corresponding the entrance and exit time of the meal periods. Bianchi and Defendants never made any agreement regarding the overtime or the meal period, neither about how these would be compensated.

52. Bianchi worked for Defendants, and Defendants approved and allowed Bianchi to work, not less than 9 hours daily during each of 5 working days. This equals a working schedule of not less than 45 hours weekly, 5 hours weekly in excess of the hours allowed by the FLSA (40) and 1 hour   daily in excess of the allowed by Law 379 for each day (8). In addition, Bianchi did not usually take, under Defendants' approval and acquiescence, the meal period. Generally, he took 2 out of 5 meal periods weekly. Bianchi was obligated to keep working in the duties described in Paragraph 54 of this complaint and this working time was not compensated according to the law. This equals 2 meal periods weekly that were not compensated according to the law during the 3 years preceding the discharge. Managers were in charge of the supervision of Bianchi and of

payroll matters. They knew about Bianchi's working hours for they visited the store and saw Bianchi working.  Defendants required always Bianchi to work more than 40 hours per week, more than 8 hours daily and during the meal periods, as well as allowed and permitted always Bianchi to work more than 40 hours per week, more than 8 hours daily and during the meal periods. Defendants had knowledge of Bianchi's uncompensated work since they were present at moments when Bianchi worked said overtime.

53.    As a consequence, Defendants owe Bianchi approximately amount of $38,025.00 in overtime unpaid compensation for overtime and not less than $15,210.00 in meal periods worked, and not used, by Bianchi that were not compensated by Defendants according to the law and an additional equal amount as liquidated damages. Bianchi claims overtime and meal periods compensation corresponding to his work during the 3 years preceding Bianchi's discharge, this is from July 7, 2010 until July 7, 2014. Bianchi worked not less than 780 overtime hours (before and/or after the scheduled shifts) and nor less than 312 meal periods approximately that were not adequately compensated.

54. Defendants used as pretext, to willfully avoid the payment of overtime and meal periods, that Bianchi was an exempted employee, but Bianchi was not exempted according to the law. Bianchi's duties were those of a non-exempted employee. Among other things, management was not his primary duty, Bianchi did not have an input into the job status of other employees such as firing, promotions, assignments and setting rates of pay. Bianchi spent most of the shift serving customers, cleaning, organizing, among other non-exempted duties. Defendants knew that Bianchi performed these non-exempted duties and activities during the meal periods and before

and after the scheduled shifts. As stated, being superiors present, observed Bianchi performing the duties and activities.

## FIRST CAUSE OF ACTION

56.     Rodriguez, Davila and Bianchi repeat and reallege allegations from 1- 55 as if fully set herein.

57.     Defendants' conduct against Rodriguez, Davila and Bianchi constitutes discrimination on the basis of age in violation of the ADEA.

58.     As a proximate result of the defendants' discriminatory practices, Rodriguez, Davila and Bianchi have suffered intensely, have been deprived of their means of livelihood and have been emotionally devastated.

59.     Defendants are liable to Rodriguez, Davila and Bianchi for compensatory and emotional damages, back pay, loss of income, salaries and benefits, and they are entitled to be reinstated to their former positions, which they held prior to the discriminatory discharge, and/or front pay in lieu of reinstatement until age 70.

## SECOND CAUSE OF ACTION

60.     Rodriguez, Davila and Bianchi repeat and reallege each and every preceding allegation as if fully set herein.

61.     Defendants' discriminatory conduct constitutes a willful violation of the ADEA and as a result thereof the defendants are liable to Rodriguez, Davila and Bianchi for liquidated damages.

**THIRD CAUSE OF ACTION**

62.     Rodriguez, Davila and Bianchi repeat and reallege each and every preceding

allegation as if fully set herein.

63.     Defendantsø conduct constitutes discrimination on the basis of age in violation of

Law No. 100 of June 30, 1959, as amended and as a result thereof defendants are liable to

Rodriguez, Davila and Bianchi for compensatory and double damages.

**FOUTH CAUSE OF ACTION**

64.     Plaintiffs repeat and reallege each and every preceding allegation as if fully set

herein.

65.     Plaintiffs were employees in commerce and industry for defendants, for which they

worked for compensation under contract without a fixed period of time.

66.      Defendants discharged Plaintiffs from their employment in violation of 29 LPRA

Section 185a et seq., which entitles them to the approximate amounts of $35,000.00 to Fonseca,

$74,627.00 to Davila, $125,961.54 to Rodriguez, and $162, 846.15 to Bianchi in severance pay.

**FIFTH CAUSE OF ACTION**

67.     Bianchi repeats and realleges each and every preceding allegation as if fully set

herein.

68.     Defendants, in many working weeks, willfully and repeatedly violated and continue

to violate the provisions of Section 7 and 15(a)(2) of the Act. Indeed, Defendants employed

Bianchi and other employees in commerce or in the production of goods for commerce, or

employed them in enterprises engaged in commerce or in the production of goods for commerce,

for working weeks longer than those prescribed in Section 7 of the Act without compensating Bianchi for in excess of the prescribed hours in said workweek, at rates no less than one and one-half times the regular rate at which Bianchi was employed.

69.     Defendants are liable for unpaid overtime compensation owing to Bianchi under Section 7 of the Act and an additional equal amount as liquidated damages pursuant to Section 16 (c) of the Act for Defendants' violation of the Act for the violation of the Act for was willful as described in Paragraphs 50-52, adopted here by reference. Defendants are also liable for unpaid overtime and meal periods under Puerto Rico's Law No. 379 of May 15, 1948 (29 L.P.R.A. 271 et seq.) and an additional equal amount as liquidated damages.

70.     As a consequence, Defendants owe Bianchi $38,025.00 approximately in overtime unpaid compensation for overtime and $15,210.0 approximately in meal periods worked and not used by Bianchi, and that were not compensated by Defendants according to the law, plus additional equal amounts as liquidated damages. Bianchi claims overtime and meal periods compensation for the 3 years preceding Bianchi's discharge, this is from July 7, 2010 until July 7, 2014.

## SIXTH CAUSE OF ACTION

71.     Davila, Fonseca and Rodriguez repeat and reallege each and every preceding allegation as if fully set herein.

72.     Davila, Fonseca and Rodriguez, while employed by defendants, performed the duties of their positions in a satisfactory manner.

73.     Davila, Fonseca and Rodriguez were terminated by defendants in retaliation for engaging in a protected activity under the FLSA. They participated in a protected activity and were

subsequently terminated. There is a casual connection between the Plaintiffsø participation in the protected activity and the action taken by defendants.

74.     As a result of defendantsø retaliation, Plaintiffs have been emotionally devastated.

75.     Defendants are liable to Plaintiffs for compensatory and emotional damages, back pay, double damages, and they are entitled to reinstate in their jobs.

76.     Defendantsø retaliatory conduct constitutes a willful violation of FLSA and, as a result therefore, defendants are liable to Davila, Fonseca and Rodriguez for liquidated damages.

## SEVENTH CAUSE OF ACTION

77.     Davila, Fonseca and Rodriguez repeat and reallege each and every preceding allegation as if fully set herein.

78.     Davila, Fonseca and Rodriguez, while employed by defendants, performed the duties of their positions in a satisfactory manner.

79.     Davila, Fonseca and Rodriguez were terminated by defendants in retaliation for engaging in a protected activity under the Law 115. In fact, they participated in a protected activity and were subsequently terminated. There is a casual connection between the Plaintiffsø participation in the protected activity and the action taken by defendants.

80.     As a result of defendantsø retaliation, Plaintiffs have been emotionally devastated.

81.     Defendants are liable to Plaintiffs for compensatory and emotional damages, back pay, double damages, and they are entitled to reinstate in their jobs.

## TRIAL BY JURY

82.     Plaintiffs demand that the instant action be tried before a jury.

## PETITION FOR RELIEF

**WHEREFORE,** all premises considered, Plaintiffs pray that judgment be entered in his favor and against Defendants including the following relief:

a.      An order directing the Defendants to reinstate Plaintiffs to their employment or an award of front pay until age 70 in lieu of reinstatement and to cease and desist of any discriminatory and retaliatory conduct.

b.      Back pay, together with interest.

c.      Lost benefits and salaries both, past and future.

d.      Severance pay under 29 LPRA Section 185a.

e.      An award of liquidated damages equal to twice the back pay lost by Plaintiffs.

f.      An award of compensatory damages for the emotional suffering and distress resulting from Defendants' discriminatory and retaliatory discharge in an amount not less than $100,000.00 for each one.

g.      An award of double compensatory damages and back pay pursuant to Law No. 100.

h.      For unpaid overtime compensation due to Bianchi the approximate amount of $38,025.00.

i.      Liquidated damages equal in amount to the aforementioned unpaid compensation.

j.      For unpaid compensation for meal periods worked by Bianchi pursuant to Puerto Rico's Law No. 379 of May 15, 1948 (29 L.P.R.A. 271 et seq.) in the approximate amount of $15,210.00.

k.     Pursuant to Puerto Rico's Law No. 379 of May 15, 1948 (29 L.P.R.A. 271 et seq.), liquidated damages equal in amount to the aforementioned unpaid compensation.

l.     Reasonable attorney's fees and costs pursuant to Section 16 (b) of the Act.

m.     Attorney's fees and costs pursuant to 29 USCA 1132 (g).

n.     An award of costs and necessary disbursements.

o.     Any other remedy that this Court may deem just and proper.

In San Juan, Puerto Rico, this 29th day of June 2016.

S/Manuel Durán-Rodríguez
MANUEL DURAN-RODRIGUEZ, ESQ.
USDC- PR No.204512
MANUEL DURAN LAW OFFICE
1139 AMERICO MIRANDA AVE.
SAN JUAN, PUERTO RICO 00921
TEL. (787) 781-7373
FAX (787) 781-7771
Mduranlaw@aol.com